No. 35,951

JULIA GILMORE, *Appellee,* v. THE CITY OF KANSAS CITY et al., *Appellants.*

(142 P. 2d 699)

Opinion filed November 6, 1943.

*William H. Towers* and *Charles W. Lowder,* both of Kansas City, argued the cause, and *A. H. Skinner, Wm. H. McHale, Jos. A. Lynch, Wm. Drennan* and *Otto Ziegelmeyer,* all of Kansas City, were on briefs for the appellants.

*Paul H. Ditzen,* of Kansas City, argued the cause, and *Hylton Harman,* of Kansas City, was on briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: Kansas City and its Board of Public Utilities appeal from a judgment for damages for personal injuries suffered when plaintiff fell into a hole in a parkway. Appellants contend that they had no notice of the defect, that the plaintiff was guilty of contributory negligence, and that the verdict was excessive in amount.

On the evening of October 14, 1939, plaintiff Julia Gilmore, a resident of Kansas City, went down town in a car driven by her brother, other passengers being her mother and her son. At about 10:30 p. m. they parked their car on the west side of Tenth street some distance north of the intersection of Tenth and Ray streets. When plaintiff stepped from the curb onto the parkway she fell into a hole, sustaining the injuries complained of. We are not advised when the action was filed, but the case did not go to trial until February 23, 1943. Plaintiff asked damages in the sum of $5,000 against both the city and the Board of Public Utilities which operates the city's water and light department. The defendants' answers were a general denial and an averment of contributory negligence by plaintiff. The jury brought in a verdict against both defendants for $2,750 and answered special questions as follows:

"1. If you find there was a defect in said parkway at the point where the alleged accident occurred, did the city have actual notice thereof and to whom was such notice given? A. Yes. After the accident to Water and Light Department.

"2. If you answer question No. 1 in the negative, state whether or not the defendant city and defendant Board of Public Utilities, by the exercise of ordinary care could or should have known of such alleged defect in time to have remedied or repaired the same before the accident which plaintiff claims caused her injury. A. Yes.

"3. At the time and place in question was the parkway in a reasonably safe condition for use, considering the extent of pedestrian travel thereon? A. No.

"4. Do you find from the evidence that the plaintiff's injury was caused by her own negligence? A. No.

"5. Do you find from the evidence that plaintiff's negligence contributed to her injury? A. No.

"6. Who do you find, from the evidence, was responsible for leaving the excavation or hole in which plaintiff alleged she was injured?

"The City: Yes.

"The Board of Public Utilities: Yes.

"The streetcar or Public Service Company: No."

The appeal is from the judgment, from an order overruling demurrers to plaintiff's evidence, and from orders overruling motions

to set aside the answer to question No. 2, for judgment for defendants, and for a new trial.

The Board of Public Utilities, hereinafter called the board, is a quasi-municipal corporation which operates the city's water and light plants. Under the allegations of the petition both the city itself and the board were properly joined as defendants.

A city which owns and operates an electric light system is bound to the same degree of care in maintaining it as a privately owned public utility. (*Webb v. City of Oswego,* 149 Kan. 156, 86 P. 2d 553.) The operation of the plant for the city by a separate agency does not relieve the city from liability. (*Seely v. Board of Public Utilities,* 143 Kan. 965, 57 P. 2d 471.)

We first consider the demurrer to plaintiff's evidence which raises the question of whether there was evidence of notice of the defect and whether on her own statement plaintiff was guilty of contributory negligence as a matter of law. In passing upon the demurrer appellee is entitled, under the oft-stated rule, to have only that evidence considered which is favorable to her and to all inferences which may reasonably be drawn from the evidence in her favor. (*Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903.)

Plaintiff testified that she and those with her were on their way to a beer tavern located across the street from the point where they parked their car; that she was the last one to get out of the car; that she had been riding in the front seat and got out on the right-hand side of the car, which was headed south; that she stepped on the curb and then took the next step with her right foot, when she fell into a hole; that her right leg went into the hole and her left leg crumpled up under her; that her brother and son helped her out and that she could hardly walk; that they went across the street to the beer parlor and sat down at a table; that she was feeling bad, her back giving her trouble and her legs hurting; that they did not stay at the beer parlor more than ten minutes and then went home. Her own testimony and that of others as to the nature and extent of her injuries will be referred to later.

The hole was 12 or 14 inches in diameter and from two to two and a half feet deep. Around the top it had a rim of rough cement, and the hole was more or less obscured by grass and weeds. The parkway, between the curb and the sidewalk, was narrow, one witness testifying that it was three or four feet wide. Plaintiff's mother, who preceded her out of the car, stepped onto the curb and then

across to the sidewalk—apparently in one step, though this is not entirely clear from the testimony. The car was parked between two poles located in the parkway about six feet apart—one a wooden pole and the other an iron pole.

The serious character of the defect in the parkway cannot be questioned. A hole a foot or more wide and two feet or more deep cannot be regarded as a slight defect. The case, therefore, is to be distinguished at the outset from cases involving small obstructions or depressions or other slight defects in streets, sidewalks or parkways. This subject is fully discussed and authorities cited in *Biby v. City of Wichita,* 151 Kan. 981, 101 P. 2d 919, and the cases need not now be reviewed. The very recent case of *Blankenship v. Kansas City,* 156 Kan. 607, 135 P. 2d 538, involved a hole in a sidewalk, the witnesses differing as to how large and deep it was. We again noted the rule as to slight defects but stated that if the hole was a foot and a half wide, two to three feet long, and six to eight inches deep, as it was described by the plaintiff, the defect would be one which the city would not be justified in leaving in the walk if it knew such a defect existed. In that case, however, recovery was denied because of lack of notice, either actual or constructive.

Appellants stress the fact that the defect was not in a street or sidewalk but was in a parkway, which is not intended for public travel but which is reserved by the city for poles, hydrants, and other such equipment used by privately owned public utilities. They urge that this court has gone far in holding cities free from liability for defects in parkways and virtually contend that no defect in a parkway is actionable, as against the city. They rely largely on our recent cases of *Dargatz v. Dodge City,* 151 Kan. 747, 100 P. 2d 680, and *Mead v. City of Coffeyville,* 152 Kan. 799, 107 P. 2d 711. We think appellants push the doctrine much too far. Certainly cities should not be held to the same degree of care in maintaining parkways as in the case of sidewalks and streets. Parkings or parkways are not to be classed primarily as public thoroughfares. It is admittedly difficult, and perhaps impossible, to lay down a definite rule covering the degree of care required in maintaining them. But certainly we can not adopt a broad rule absolving a city from all liability. All the particular facts and circumstances must be considered. In the Dargatz case the parking between curb and sidewalk had been graveled or sanded and part of the gravel and sand had washed out, the depression into which the plaintiff stepped being

described as fifteen inches one way, two feet the other way, and five to seven inches deep. There was no evidence that the city caused the depression. On the facts shown we held that there was no actionable negligence. The Mead case involved an iron stake one-fourth inch in diameter and five inches high, upon which plaintiff tripped and fell. There was no evidence or contention that the city was responsible for the stake being there, or that it had actual notice of its presence. While parkways are not intended for the use of pedestrians, generally, when sidewalks are provided, it is common knowledge that cars are parked at curbs and frequently the parkway must be used in getting to the sidewalk, unless passengers alight into the line of vehicular traffic and use the street. All attendant facts must be considered. (See *Register v. City of Pittsburg*, 139 Kan. 753, 33 P. 2d 173.) In the instant case the parkway was narrow, requiring only a step or two to cross, and the location was apparently in a business section. We cannot agree that the city had no responsibility to a pedestrian crossing it for the condition of the parkway.

Who and what caused the hole in the parkway? We think there was sufficient evidence upon which the jury could find that the hole was caused by the removal of a light pole by the board and failure either to fill it or to take adequate means for preventing its becoming a serious hazard to safety. There was testimony that the board had changed many poles along that part of the parkway; that generally new poles had been set about two feet from the old poles which were removed; that there was an electric light pole twenty-nine inches from the hole; that the hole was 12 to 14 inches wide, being about the size required for the electric light poles; a police officer testified — apparently without objection — that he learned from others after the accident that the hole had been made by the removal of an electric light pole; that the rough cement around the rim of the hole looked old; an employee of the board, employed in the "trouble department" testified:

"Q. Well, Joe, if that hole was twelve to fifteen inches in diameter, it might have been your pole? A. It might have been; yes, sir.

"Q. And if the new pole was set approximately from three to six feet from this hole, it was probably your pole, wasn't it? A. It could have been; yes, sir."

Did the city have notice of the defect? No proof was made of actual notice. It is true that the jury later answered question No. 1

in the affirmative. But it robbed the answer of any effect by locating the actual notice subsequent to the accident. However, the general rule is that actual notice is not required where the defect was caused by the city itself or by persons for whose acts it is responsible. Perhaps it would be more accurate to say that in such cases notice is implied. (25 Am. Jur. 729; 50 A. L. R. 1193; 43 C. J. 1042; *Tepfer v. City of Wichita,* 90 Kan. 718, 721 *et seq.,* 136 Pac. 317.) Furthermore, assuming that the hole was caused by the removal of an electric light pole and inadequate provision to take care of it, it would be hard to say that the jury could not reasonably conclude from the evidence that the hole had been there a sufficient time to give constructive notice.

Was appellee guilty, on her own testimony, of contributory negligence as a matter of law? We think not. Appellants stress her statements that she didn't attempt to observe the parking space as she got out of the car; that she didn't look down to see if there was a hole. We need not narrate her whole testimony. She also testified that she did look down as she stepped out of the car; that she didn't expect there would be a hole in the parkway and didn't see any hole. There was testimony that the hole was more or less obscured by grass and weeds. It is by no means clear that she could have seen the hole no matter how closely she had looked. The presence of a hole of that size and depth was not within the reasonable probabilities. She was not obliged, as a matter of law, to examine the parkway with meticulous care before stepping upon it. The question was for the jury.

Was the amount of the judgment excessive? Apparently no contention was made on this point in the court below, either in the motion for a new trial or otherwise. However, we have reviewed the evidence and while there was conflict in the medical testimony we find ample evidence to support the judgment for $2,750.

The motions for judgment for defendants and for a new trial raise no questions not already considered.

We find no error and the judgment is affirmed.