No. 51,604.

Board of Public Utilities of Kansas City, Kansas, *Appellant,* v. City of Kansas City, Kansas, John Reardon, Patrick Hanlon and Robert Zahnter, *Appellees.*

(605 P.2d 151)

Opinion filed January 19, 1980.

*John H. Fields,* of Carson, Fields & Boal, of Kansas City, argued the cause and the firm of Stinson, Mag & Fizzell, of Kansas City, Missouri, was with him on the brief for the appellant.

*Robert J. Watson,* city attorney, of Kansas City, and *Norman E. Gaar,* approving bond counsel, of Kansas City, Missouri, argued the cause and *J. F. Steineger,* special bond counsel, of Kansas City, was with them on the brief for the appellees.

The opinion of the court was delivered by

Herd, J.: This is an action in the nature of a declaratory judgment, peremptory injunction and mandatory injunction brought by the Board of Public Utilities of Kansas City (BPU or Board), to determine whether the Board or the city of Kansas City, Kansas, has the statutory authority to determine and prescribe the manner, procedure and method of issuing and selling new construction and refunding revenue bonds of Kansas City, Kansas, pursuant to K.S.A. 13-1252 *et seq.* A three-judge panel of the Wyandotte District Court unanimously ruled in favor of the city. The Board appealed from that judgment. We affirmed the judgment of the trial court in an abbreviated opinion handed down December 7, 1979 (227 Kan. 1, 603 P.2d 627).

Prior to 1929, the water and light plants in Kansas City, Kansas, were under the operation and control of the governing body of the city, and more particularly the commissioner of water and lights. The 1929 legislature enacted Senate Bill No. 183 which was

entitled "An act relating to municipally owned water and light plants in certain cities, and creating a board of control, construction, operation and management thereof." L. 1929, ch. 126. This act is now K.S.A. 13-1220 - 13-1234a. Some, but not all, of the sections have been amended in the fifty years since the act was passed.

The act provides in each city of the first class, identified as having a population over 100,000, which owns and operates municipal water and electric light plants, there shall be elected a board of public utilities which shall manage, operate, maintain and control the water and light plants with authority to improve, extend or enlarge the system. K.S.A. 13-1234 abolished the office of water and light commissioner, and devolved its duties upon the Board of Public Utilities. The 1929 act provided for the issuance and sale of general obligation bonds deemed necessary by the BPU for the construction, extension or improvement of the water and electric plants. (K.S.A. 13-1231, 13-1232.) In 1941, the legislature enacted K.S.A. 13-1251 - 13-1264, providing for the issuance and sale of water and electric light plant revenue bonds in municipalities where the plants are operated by a board of public utilities. K.S.A. 13-1253 was amended in 1975 and again in 1977 to provide for the issuance of refunding revenue bonds.

The facts which give rise to this action are not in dispute. On June 16, 1977, the city of Kansas City, Kansas, upon receipt of a resolution, estimated cost, and notice of intention from its board of public utilities, approved and published notice of intent to cause to be issued $96,000,000.00 of water and electric light plant revenue bonds, pursuant to K.S.A. 10-1201 - 10-1212, and 13-1252 - 13-1264. The bonds are to be used for partial payment of a new electrical generating plant, estimated to cost $187,800,000.00. To date, $57,000,000.00 of the principal amount of the $96,000,000.00 authorized, has been issued. The first $32,000,000.00 was issued October 1, 1978; the last $25,000,000.00 was issued July 1, 1979. This controversy arises out of proceedings to issue and sell the next $32,000,000.00 of the authorized $96,000,000.00 and to refund $63,000,000.00 of bonds previously issued.

On August 13, 1979, the city commission and the BPU held a preliminary meeting. The parties discussed public sale of the bonds by competitive bid and it was agreed a financial advisor

was needed. On August 27, 1979, the tentative schedule of all the acts necessary for issuance and sale of the proposed bonds by competitive bid at a public sale was circulated to the city commission and the Board. The schedule showed the action which needed to be taken by the city and the Board. Thereafter, on September 19, 1979, officials of the city and the Board met in the mayor's office at which time the city was advised the BPU wished to have the bonds sold by negotiation. The city objected to this method of sale and adopted Resolution No. 31695 on September 26, 1979, which authorized the city attorney and the city bond counsel to prepare the proposed bond issue for public sale by competitive bid as soon as possible. The city then employed Kidder, Peabody & Co. to act as financial advisor, with whom the Board was requested to cooperate.

BPU continued to hold out for negotiating the sale of the bonds and passed Resolution No. 4462 on October 3, 1979. The resolution directed the city to issue $98,000,000.00 principal amount of water and electric light plant revenue bonds to be sold on a negotiated basis. The Board retained Stern Bros. & Co. as senior underwriters, with Stinson, Mag & Fizzell as bond counsel and the Commercial National Bank of Kansas City, Kansas, as escrow agent. The Board's resolution directed the city to retract, rescind and nullify its resolutions regarding competitive bidding and the employment of a financial advisor. The city refused to comply.

This action was filed by the BPU on October 4, 1979, and was tried to a three-judge panel on October 23, 1979. Judgment was rendered for the city; the Board appeals. We are called upon to determine the scope of authority granted the Board of Public Utilities by K.S.A. 13-1221 *et seq.* The Board claims complete autonomy and the city maintains the Board is only an administrative agency with authority over the day-to-day operations of the water and electrical systems of the city. Because the powers of both the city and the Board are creatures of statute, an examination of the statutory law provides the answer.

K.S.A. 1979 Supp. 13-1221 provides authority for creation of the Board and governs its membership and election of officers. The Board's powers and duties are set forth in K.S.A. 1979 Supp. 13-1223, which states:

"The board of public utilities shall have the exclusive control of the water plant and the electric-light plant and shall be charged with the duty of producing and

supplying the city and its inhabitants with water and electric energy for domestic and industrial purposes and for public use in the city, and subject to the provisions of K.S.A. 66-131 and K.S.A. 1977 Supp. 66-104, may sell and dispose of any surplus outside of the city. It shall have power to hire and discharge all employees, agents and officers of the water and light departments and fix their compensation, and as a part of such compensation, the board may pay the cost of group hospitalization, surgical benefits, and insurance for its employees. The purchasing agent for the board shall, in conjunction with and under the authority of the board, purchase all supplies and make all contracts for services and equipment required by the board or any department thereof, and shall keep true and accurate records of all such purchases and contracts so made. The purchasing agent shall make monthly reports to the board of all purchases made or contracts entered, and for which department such were made. Except as hereinafter provided, prior to making a purchase of a commodity other than fuel or entering into a contract for supplies or services, which purchase or contract involves an expenditure of more than ten thousand dollars ($10,000), the purchasing agent shall advertise for bids thereon in a daily newspaper which shall be designated by the board. Upon a vote of four (4) members of the board authorizing the same, no advertisement for bids shall be required in the event of an emergency, and if the board consents thereto, no such advertisement shall be required for products or services requiring specialized products or skills including, but not by way of limitation, photographs, maps, books and educational supplies.

"The board may in the name of the city take and hold by purchase, gift, devise, bequest or otherwise such franchises and real or personal property either within or without the city as may be needful or convenient for the carrying out of the intended purposes for which it is established.

"It shall be the duty of the governing body of the city when requested by the board of public utilities to enact such ordinances as may be deemed necessary for the protection of the water and light plants, and to institute condemnation proceedings whenever in the judgment of the board of public utilities private property should be taken in the name of the city for water plant or electric-light plant purposes. The board of public utilities may establish all reasonable rules and regulations to protect the rights and property vested in the city and under control of the board; may issue vouchers or warrants in payment of all claims and accounts incurred by said board for the respective departments, which vouchers or warrants when approved by the board shall be authority to the city treasurer to pay and charge the same against the proper funds, and shall also have such other powers as may be necessary for the proper discharge of its duties."

A close examination of the grant of power contained in this statute reveals it falls short of those powers normally considered inherent powers of an independent legal entity. For example, powers vested in other statutory bodies, such as a port authority created by K.S.A. 12-3401 *et seq.,* are in sharp contrast to the powers of the Board. A port authority can sue and be sued (K.S.A. 1979 Supp. 12-3402[a]); borrow money (K.S.A. 12-3406[b]); acquire, own, hold, sell, lease or operate real or personal property

(K.S.A. 12-3406[*e*]); exercise the power of eminent domain (K.S.A. 12-3406[*h*]); and issue revenue bonds and refunding revenue bonds (K.S.A. 12-3415 - 12-3420). Other legal entities, such as water supply and distribution districts, K.S.A. 19-3501 *et seq.,* and industrial districts, K.S.A. 19-3801 *et seq.,* are granted similar powers not conferred on the BPU. In addition, it is significant to note the city treasurer is the ex-officio treasurer of the Board of Public Utilities, illustrating the legislature contemplated the city having a role in financial matters of BPU.

Let us now turn to the question of which entity has authority to sell and issue revenue bonds and refunding revenue bonds, pledging the income of the Board of Public Utilities of the city of Kansas City, Kansas. K.S.A. 13-1252 - 13-1264 are applicable to municipalities with a population of more than 120,000, which own and operate a water and light plant, whether by itself or through a board of public utilities. K.S.A. 13-1252 grants revenue bonding power to certain "municipalities," defined in K.S.A. 10-101 as "every corporation and quasi corporation empowered to issue bonds in payment of which taxes may be levied."

Clearly, the city of Kansas City, Kansas, is the municipality referred to in the statute. The city is the municipality qualified to issue and sell revenue bonds for reconstruction, alteration, repair, improvements, extension or enlargement of the water and light plant, pursuant to K.S.A. 1979 Supp. 13-1253. The BPU, specifically created by K.S.A. 13-1221, is not included in the definition. The Board operates the water and electric plants in the name of the city to produce and supply the city and inhabitants with water and electric energy as an agency of the city, subject always to the application of a home rule charter ordinance. Case law supports this position. *Hubert v. Board of Public Utilities,* 162 Kan. 205, 174 P.2d 1017 (1946); *Gilmore v. Kansas City,* 157 Kan. 552, 142 P.2d 699 (1943); *Seely v. Board of Public Utilities,* 143 Kan. 965, 57 P.2d 471 (1936); *State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618 (1930). The specific powers granted the Board by K.S.A. 1979 Supp. 13-1223 do not include the power to levy taxes. We hold a board of public utilities to be an administrative agency of the city charged with the duty of managing, operating, maintaining and controlling the water and electric light plants of the city. Such an agency, having no power to levy taxes, is neither a municipal corporation nor a quasi-municipal corporation, pursu-

ant to K.S.A. 10-101. The city, not the BPU, is authorized under K.S.A. 1979 Supp. 13-1253 to issue and sell revenue and refunding revenue bonds.

In the alternative, appellant contends that although bonds must be issued and sold by the city, statutory provisions vest authority in the board of public utilities to determine the amount, time, manner, methods and procedure of issuance and sale. The Board relies upon K.S.A. 13-1260 for authority, which states:

"In municipalities of the class provided for herein, if the water and light plants thereof are under the control and management of a board of public utilities as provided by law, when three-fifths of said board of public utilities shall deem it necessary and expedient that revenue bonds be issued for any of the purposes provided for herein, it shall be the duty of the governing body of such city within ten days after receiving written request from said board of public utilities to take the necessary steps for the issuance of such revenue bonds and the governing bodies of such city shall issue and sell *such bonds as requested by the board of public utilities,* the proceeds thereof to be delivered to the treasurer of the board of public utilities.

"That where it is necessary, as provided herein, to hold an election to submit the question of the issuing of such revenue bonds to the qualified electors of the municipality, such elections shall be held in accordance with the provisions herein and the general election laws of the state of Kansas where applicable, and the cost thereof, if held on dates other than the dates of the regular city election, or general election, shall be paid by the board of public utilities of such city." (Emphasis provided.)

Much is made of the meaning of the phrase "such bonds as requested by the board of public utilities." The BPU would have us read the phrase to mean the city shall issue and sell such bonds "in the manner" requested by the BPU. Without delving into semantics, we think it apparent from viewing the entire act, it is the intent of the legislature to place the ultimate debt responsibility on the governing body of the city. The title to all property remains in the city; the bonds are issued and sold in the name of the city; the city is a necessary party to sue and be sued. This makes it apparent the words "as requested" refer to the words "such bonds," immediately preceding. Thus, a logical reading of the statute shows the sentence means the city shall issue and sell bonds the BPU requests be sold. This interpretation is consistent with K.S.A. 13-1256, which states: "Such bonds may be sold in such manner as the governing body of the municipality shall determine . . . ." The Board possesses the factual information required to determine the need for construction and ability to

repay. That information is relayed to the city with a request for bonds. The city shall then exercise its governmental function within ten days, study the request and if reasonable and proper, issue and sell the bonds as requested, in the manner and at the time the governing body deems appropriate.

The final issue is whether the city has authority to issue and sell refunding revenue bonds without a request from the Board and, as a corollary, whether a majority of the Board may require the city to issue and sell refunding bonds. K.S.A. 1979 Supp. 13-1253 answers the question where it states:

"Any municipality which has issued or may hereafter issue revenue bonds under the provisions of this section may at any time deemed advisable issue and sell refunding revenue bonds to refund any previous issue or issues or part thereof which are outstanding either at or prior to their maturity."

The legislature granted the city authority to refund at anytime it deemed refunding advisable. There are no qualifications to the grant of power. The city, in its uncontrolled discretion, is empowered to make the decision. It can neither be forced to issue nor restrained from issuing the refunding bonds. The city has sole power to prescribe the amount, time, manner, procedure and method of issuance. The statute is clear and unambiguous and needs no construction by this court.

From the foregoing, it is obvious the actions of the Board of Public Utilities were ultra vires.

The judgment of the trial court is affirmed.