**BOARD OF PUBLIC UTILITIES OF KANSAS CITY, Kansas, and Anthony M. Mikesic, Jr.; Maurice R. Holman; Gary R. Stallings, D.V.M.; Clarence R. DeGraeve; Ronald A. Grey, Jr.; and Harold L. Weaver; all as Members of the Board of Public Utilities of Kansas City, Kansas, Plaintiffs,**

v.

**CITY OF KANSAS CITY, Kansas, a Municipal Corporation, and John Reardon, Mayor; Patrick Hanlon, Commissioner of Finance, Health and Public Property; L. Robert Zahnter, Commissioner of Streets, Parks and Boulevards; as Commissioners of the City of Kansas City, Kansas; and The State of Kansas; and Robert T. Stephan, Attorney General of the State of Kansas, Defendants.**

Civ.A.No. 80–2139.

United States District Court, D. Kansas.

July 8, 1980.

---

John H. Fields, Carson, Fields, Boal, Jeserich & Asner, Kansas City, Kan., for plaintiffs.

Kathryn Pruessner Peters, Asst. City Atty., Legal Dept., Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

Plaintiffs in this action challenge the constitutionality of a recently enacted Kansas law, House Bill No. 2841, and seek to enjoin its enforcement. A hearing was held April 24, 1980, on motions to dismiss filed by defendants, and also on plaintiffs' request for a preliminary injunction. Having carefully considered the arguments and briefs of the parties, we have concluded that defendants' motions to dismiss must be granted.

The Board of Public Utilities (BPU) was created by statute in 1929 and operates Kansas City's water and light plants. The Board consists of five members, nominated and elected by the city at large for a term of four years. Shortly after the original statute was passed, it survived a challenge to its constitutionality in *State ex rel. v. McCombs*, 129 Kan. 834, 284 P. 618 (1930). The Kansas Supreme Court recognized the power of the state to provide for a quasi-independent board and held that it was not the province of the court to determine whether the legislature's decision was "impolitic or ill-advised." The court concluded that the "intrusion of a new board to manage the municipal light plants in Kansas City independently of the city government is somewhat of an anomaly. Whether it shall turn out to be wise and practicable can only by determined by experience. But it was within the power of the legislature to enact the statute; and we must hold that the statute does not contain the constitutional infirmities urged against it." *Id.* at 844, 284 P. at 622.

Over the years, the Kansas Supreme Court has been faced with questions relating to the legal status of the BPU in light of its somewhat peculiar status as a "quasi-legal entity," *Seely v. Board of Public Utilities*, 143 Kan. 965, 57 P.2d 471 (1936), or a "quasi-municipal corporation," *Gilmore v. City of Kansas City*, 157 Kan. 552, 142 P.2d 699 (1943). In *Seely, supra*, the supreme court described the BPU as an administrative agency created to operate the city's electric light plant, and held that the city was a necessary party to actions alleging negligence in the operation of the electrical system.

Early this year, in a suit brought by the BPU against Kansas City, the supreme court was called upon to determine the scope of authority granted by the legislature to the BPU. The BPU claimed complete autonomy, while the city maintained that the BPU was only "an administrative agency with authority over the day-to-day operations of the water and electrical systems of the city." *Board of Public Utilities v. City of Kansas City*, 227 Kan. 194, 196, 605 P.2d 151, 153 (1980). The court examined the statutory grant of power to the BPU and found that:

it falls short of those powers normally considered inherent powers of an independent legal entity. For example, powers vested in other statutory bodies, such as a port authority created by K.S.A. 12–3401 *et seq.*, are in sharp contrast to the powers of the Board. A port authority can sue and be sued (K.S.A. 1979 Supp. 12–3402[a]); borrow money (K.S.A. 12–3406[b]); acquire, own, hold, sell, lease or operate real or personal property (K.S.A.

12–3406[e] ); exercise the power of eminent domain (K.S.A. 12–3406[h] ); and issue revenue bonds and refunding revenue bonds (K.S.A. 12–3415 – 12–3420). Other legal entities, such as water supply and distribution districts, K.S.A. 19–3501 et seq., and industrial districts, K.S.A. 19–3801 et seq., are granted similar powers not conferred on the BPU. In addition, it is significant to note the city treasurer is the ex–officio treasurer of the Board of Public Utilities, illustrating the legislature contemplated the city having a role in financial matters of BPU. Id. at 197–98, 605 P.2d at 154.

The particular question before the court was which entity had authority to issue revenue bonds and refunding revenue bonds. In holding that such authority rested with the city, the court said:

> We hold a board of public utilities to be an administrative agency of the city charged with the duty of managing, operating, maintaining and controlling the water and electric light plants of the city. Such an agency, having no power to levy taxes, is neither a municipal corporation nor a quasi–municipal corporation, pursuant to K.S.A. 10–101. The city, not the BPU, is authorized under K.S.A. 1979 Supp. 13–1253 to issue and sell revenue and refunding revenue bonds. Id. at 198–99, 605 P.2d at 154.

After this decision was announced, the legislature passed the law now challenged in this court. We will discuss only those portions of House Bill No. 2841 upon which plaintiffs' claims are based.

The new statute specifically describes the BPU as an administrative agency. With respect to certain statutes relating to the payment of money by the BPU to the city, the new statute provides "that (1) all the provisions of K.S.A. 1979 Supp. 12–825d shall remain in force when sufficient revenues have been set aside for the current year's principal and interest upon the revenue bonds and (2) all the provisions of K.S.A. 13–1269 to 13–1274, inclusive, and amendments thereto, shall remain in force when the provisions of K.S.A. 13–1270, and amendments thereto, are complied with." The law before this amendment stated that the provisions of such statutes "shall remain in force when sufficient revenues have been set aside for the payment of one year's principal and interest in addition to the current year's principal and interest upon the bonds."

The law as amended states that the BPU "may sue and be sued only in the name of and on behalf of the city except it shall have no standing in any court as a party plaintiff in any litigation against the city."

Under the new statute, the "board or any employee of the board shall be personally liable for any expenditure or loss incurred by the city through failure or refusal of the board, or such employee, to comply with any ordinance adopted by such city under authority granted by this act, or the act of which this section is amendatory."

K.S.A. 13–1226 provided for appointments as follows:

> The board of public utilities shall make all appointments and hire all officers, agents, servants and employees in the waterworks and electric–light plant and fix their compensation and determine their qualification, and shall have regard alone to relative capacity of applicants, their moral, physical and health qualifications, and when appropriate, their qualifications for manual labor. All appointments shall be made on the basis of their merit alone, and no appointment shall ever be made on account of political services or affiliations. Such officers, agents, servants and employees shall hold their offices during the pleasure of the board of public utilities.

The amendment excepts attorneys from this scheme and specifically states that "the board shall have no power to retain or pay attorneys or obtain legal services except as herein provided. All legal services needed by the board shall be provided by the city attorney's office. The cost of such services shall be paid by the city treasurer acting in the capacity of ex officio treasurer of the board from funds of the board upon presentation of vouchers or warrants authorized by the city commission.

The new law adds to the statute relating to water rates, K.S.A. 1979 Supp. 13–1227, the following sentence: "Upon direction of the city, the board shall install, repair, replace and remove fire hydrants at a reasonable cost determined by the city and shall provide an adequate water supply through such hydrants at a reasonable cost determined by the city." While under the old statute the board was permitted to fix special rates for water supplied to "the city for public purposes, or to organized institutions of charity," the amended version gives this power to the city.

To K.S.A. 1979 Supp. 13–1228, relating to electricity rates, the amending statute adds a provision that "[u]pon direction of the city, the board shall install, repair, maintain and replace street lighting equipment and traffic signal equipment at a reasonable cost determined by the city; and shall provide an adequate supply of electricity to such street lights and traffic signals at a reasonable cost determined by the city." The city rather than the board is permitted to "fix special rates for electricity furnished to the city for public purposes."

In a section relating to procedures for rate increases, the new law provides that, upon an application for review of a rate increase, the "district court shall have the power to vacate, modify or set aside the board's decision in the event it determines the findings of the board do not substantiate the reasonableness of the proposed rate increase or that such findings are contrary to law," and further that "neither the state court of appeals nor the state supreme court shall have appellate jurisdiction of such decisions of the district court rendered pursuant to this section."

Defendants argue initially that the BPU does not have capacity to bring this lawsuit. Under Federal Rule of Civil Procedure 17(b), capacity to sue or be sued is a matter of state law. The new enactment, of course, specifically bars such suits by the BPU. Our concern, however, is with the BPU's capacity to sue under prior law. Kansas statutes have never specifically authorized the BPU to sue or be sued. In

*Hubert v. Board of Public Utilities*, 162 Kan. 205, 174 P.2d 1017 (1946), the Kansas Supreme Court held that the BPU alone could not be sued in negligence, but rather that the city was a necessary and indispensible party in such an action. In *Board of Public Utilities v. City of Kansas City, supra*, the court contrasted the BPU's limited powers with those of other statutory bodies such as a port authority which can sue and be sued. 227 Kan. at 197, 605 P.2d 151. The BPU argues that, because the Kansas Supreme Court permitted the BPU's independent action against the city in the case just cited, the court found it capable of suing. It does not appear, however, that the BPU's capacity to sue was challenged. K.S.A. 60–209, like Federal Rule 9, provides that capacity to sue need not be pled, but may be challenged by the opposing party. It may well have been in the city's interest not to litigate the issue in that case. The city is, of course, not precluded from raising it here. Our examination, of the statutes creating the BPU and our reading of the cases mentioned, leads us to the conclusion that under Kansas law, prior to this amending statute, the BPU lacked capacity to sue on its own and hence was without capacity to bring this action.

Our determination that the BPU's claims must be dismissed does not, however, dispose of this case because of the presence of the individual board members as additional plaintiffs. We will therefore consider the specific claims of unconstitutionality.

Plaintiffs argue that the change in the statute relating to the amount of money to be set aside for the payment of bonds before certain payments are made to the city is an unconstitutional impairment of contract. Existing bond ordinances which constitute contracts between the issuer and bond purchasers, incorporate the statutes by reference. As we indicated earlier, the old statute provided for the setting aside of funds sufficient for the payment of one year's principal and interest in addition to the current year's principal and interest, while the new statute requires either the setting aside of only the current year's prin-

cipal and interest or the setting aside of the principal and interest on the outstanding general bonded indebtedness against the utility as such indebtedness matures, depending on the statutes under which payment is made. The claim that this amendment unconstitutionally impairs the contracts must fail. In the first place, we do not believe that plaintiffs have standing to raise this issue. *See, e. g., Flast v. Cohen,* 392 U.S. 83, 98–99, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968). The contracts are between the bondholders and the city, not between the BPU or individual board members and the city. Second, the bond ordinances refer not only to what are now the old statutes, but also to "all amendments thereof." The possibility of amendment was clearly a part of the bond contracts.

■ Plaintiffs assert that the provision in the new law permitting the city rather than the board to fix special rates for water and electricity impairs the bondholders' security. They argue that the board's complete authority over rate regulation has been of great importance to bondholders. Again, for the reasons stated above, plaintiffs lack standing to make this claim. Furthermore, the pertinent bond ordinances contain the following language: "Said City through its Board of Public Utilities will fix, establish, maintain and collect such rates, fees, or charges for the use of or services rendered by the water and electric light utility of said City." Thus, insofar as the bondholders are concerned, the city has always had the power and responsibility for fixing rates for service. The contention that the rate fixing provision unconstitutionally impairs the bond contracts is without substance.

■ At present, the BPU has a contract for legal services with a local Kansas City law firm, Carson, Fields, Boal, Jeserich and Asner. Plaintiffs claim that the law which denies the board the right to retain independent counsel is an unconstitutional impairment of this contract. The short answer to this argument is that an administrative agency of a city has no constitutional right to independent counsel. Moreover,

the contract in question specifically provides for cancellation by either party upon timely notice. We see no reason why the state cannot, through legislation, require an entity created by it to terminate a contract pursuant to the contract's own provision. For that matter, a strong argument could be made that the BPU never had authority to retain independent counsel. K.S.A. 13–1226, the statute cited by plaintiffs as the source of "full authority to individually enter into a contract for legal services," provided:

The Board of Public Utilities shall make all appointments and hire all officers, agents, servants and employees in the water works and electric–light plant and fix their compensation and determine their qualification, and shall have regard alone to relative capacity of applicants, their moral, physical and health qualifications, and when appropriate, their qualifications for manual labor.

To read that statute as a full grant of authority to retain independent legal counsel, is stretching the concept of implied authority to the breaking point.

■ Plaintiffs' amended complaint refers to a contract between the BPU and Continental Illinois National Bank and Trust Company concerning the purchase of coal by the BPU. In the contract the BPU apparently represented that it had the exclusive power to set and revise rates, fees and charges for the furnishing of electricity. Plaintiffs allege that House Bill No. 2841 impairs this agreement. While the representation in the contract may have been true at the time, the parties to the agreement must have understood that it would not necessarily be true forever. It is absurd to argue that a creature of the state can, by representing that it has certain powers, prevent the state from altering those powers in the future. *See Hudson Water Co. v. McCarter,* 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908). Plaintiffs' claim based on the coal contract has no merit.

■ Plaintiffs claim that the provision of the new law permitting special rates for

the city is impermissibly in conflict with the Public Utilities Regulatory Policy Act, 16 U.S.C. § 2601 *et seq.* The Act sets certain federal standards and provides that "[r]ates charged by any electric utility for providing electric service to each class of electric consumers shall be designed, to the maximum extent practicable, to reflect the costs of providing electric service to such class. . . ." 16 U.S.C. § 2621(d)(1). Subsections (a) and (c) of this statute, however, permit applicable state law to take precedence over the standards set out in subsection (d). We seriously doubt that the Act can be read to permit a claim such as that raised by plaintiffs and, in light of the Act's deference to state law, we find that plaintiffs' claim based on the Act must fail.

 Plaintiffs allege that the section of the new law relating to personal liability of board members, in conjunction with the section prohibiting the BPU from retaining independent counsel and from suing the city, deprives board members (1) of liberty and property without due process of law, (2) of the equal protection of the laws, and (3) of their right to the effective assistance of counsel. The Sixth Amendment claim of right to counsel is frivolous and deserves no comment. The equal protection claim is apparently based on the theory that other public officials are not covered by such a law. A state, however, may make laws applicable to a specific class of its citizens if the class singled out is not a suspect one, and if the law has a reasonable relationship to a legitimate state purpose. *See, e. g., Railway Express v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 553 (1949). In creating the BPU as an administrative agency of the city with an elected rather than appointed board, the state opened the door to unique problems. Normally, a city has the power to discipline administrative officers for failure to comply with its ordinances and directives by termination or demotion. That would not be possible in these circumstances. This section of the new law appears to be an attempt to give the city some control over board members, and in effect does no more than require the board and its employees to comply with the law or suffer pecuniary consequences. The statute is as reasonable as the creation and perpetuation of the board itself, and cannot be deemed a denial of equal protection.

Plaintiffs' due process claim is apparently based on the theory that the new law makes board members absolutely liable for failure or refusal to comply with a city ordinance, whether or not the board members have any good faith reason to question the lawfulness or reasonableness of such ordinance. The statute, however, makes no mention of *absolute* liability and does not eliminate particular defenses. The statute does not appear unconstitutional on its face. If the city attempted to sue under the statute, we cannot assume that a court would apply the statute in an unconstitutional manner. For all these reasons, we do not believe that the due process claim presents an actual case or controversy ripe for decision at this time.

The claims discussed above are federal question claims and go directly to the heart of this court's jurisdiction. Although the action must be dismissed for lack of substance with respect to the federal claims, we will briefly mention the pendant state law claims urged in plaintiffs' complaint.

 Plaintiffs allege that the provision in the new law which permits the state district court to vacate, modify or set aside a rate increase decision of the BPU violates the doctrine of separation of the powers of government in violation of Article IV, Section 4 of the Constitution, which provides that the "United States shall guarantee to every State in this Union a Republican Form of Government." It has long been held that it is the province of Congress and not the federal courts "to determine when a state has ceased to be republican in form and to enforce the guarantee of the Constitution on that subject." *Pacific States Telephone Co. v. Oregon,* 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912). Such questions are "political in character, and therefore not cognizable by the judicial power, but solely committed by the Constitution to the judgment of Congress." *Id. See also*

*Highland Farms Dairy v. Agnew*, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835 (1937). Kansas recognizes the doctrine of separation of powers, *State ex rel. Schneider v. Bennett*, 219 Kan. 285, 547 P.2d 786 (1976), and plaintiffs' claim may have merit under state law. This court, however, lacks jurisdiction to determine the claim because, as we have indicated above, plaintiffs' federal claims must be dismissed. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

█ Plaintiffs' remaining two claims are also based on state law. Plaintiffs allege that House Bill No. 2841 contains more than one subject, and the subject of the Bill is not sufficiently expressed in its title in violation of Article 2, Section 16 of the Kansas Constitution, and that the Bill is a special law in violation of Article 2, Section 16 and Article 12, Section 5 of the Kansas Constitution. Under *United Mine Workers, supra*, these claims must also be dismissed for lack of jurisdiction.

For all of the reasons stated above, we find that defendants' motion to dismiss because of lack of jurisdiction and failure to state a claim upon which relief can be granted should be granted. Accordingly, plaintiffs' request for a preliminary injunction will be denied. Although we have elected not to discuss in detail all of the points considered in the briefs, it should be apparent that we have found defendants' arguments sound, well–supported, and persuasive.

IT IS THEREFORE ORDERED that defendants' motions to dismiss plaintiffs' complaint be and hereby are sustained and that plaintiffs' request for a preliminary injunction be and hereby is overruled.